IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IRIS M. HAMMER,

    Plaintiff,

    v.

HENRY J. PAULSON, Secretary,
U.S. Department of the Treasury,

    Defendant.

CIVIL ACTION FILE

NO. 1:05-CV-2557-GGB

## FINAL ORDER

Plaintiff, Iris M. Hammer, is an employee of the Internal Revenue Service ("IRS") of the United States Department of the Treasury.  At all times relevant to this action, Plaintiff served as a Policy Analyst in the Atlanta Field Assistance Office of the IRS's Wage and Investment Division.  Plaintiff alleges that Lelia Richardson, her former IRS supervisor, retaliated against her for protected activity (three prior Equal Employment Opportunity ("EEO") complaints), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (as amended).  (Doc. 1, Complaint ¶ 9; Doc. 8; Hammer Dep. at 55).[1]  Pending before the Court are the Defendant's Motion

---

[1]Although originally filed as the Defendant's preliminary planning report, Document 8 was later adopted by Plaintiff as the joint preliminary report.  (See Doc. 11).  Although the complaint and preliminary planning report assert a claim of racial

for Summary Judgment [Doc. 47] and Plaintiff's Motion to Introduce Newly Discovered Evidence [Doc. 59].

I.    PLAINTIFF'S CLAIMS

    A.    Plaintiff's Claims Are Limited to Those That She Administratively Exhausted in a Timely Manner

Plaintiff's brief in Response to Defendant's Motion for Summary Judgment, as well as her Motion to Introduce Newly Discovered Evidence, allude to Defendant's alleged failure to promote her to a GS-14 grade position within the IRS.  To the extent that Plaintiff is alleging a failure-to-promote claim, such a claim is not properly before the Court.[2]

A federal employee who asserts a discrimination claim under Title VII must exhaust her administrative remedies before proceeding in federal court by lodging a complaint with the EEO office at her agency within 45 days of the alleged discrimination.    42 U.S.C. § 2000e-16(b); 29 U.S.C. § 795a(a)(1); 29 C.F.R.

---

discrimination, Plaintiff has abandoned any such claim by not discussing it in her Response to Defendant's Motion for Summary Judgment.

    [2]Plaintiff also admitted in the oral argument, on July 13, 2007, that this is a retaliation case, not a failure-to-promote case.  (Doc. 71 at 8).

2

§ 1614.105(a)(1).  Employees are precluded from raising claims in federal court that were not timely raised in the administrative process, or that could not reasonably have been expected to grow out of that process.  See Manning v. Carlin, 786 F.2d 1108, 1109 (11th Cir. 1986); Eastland v. Tennessee Valley Authority, 714 F.2d 1066, 1067-68 (11th Cir. 1983), cert. denied, 465 U.S. 1066, 104 S.Ct. 1415, 79 L.Ed.2d 741 (1984); Ray v. Freeman, 626 F.2d 439, 443 (5th Cir. 1980), cert. denied, 450 U.S. 997, 101 S.Ct. 1701, 68 L.Ed.2d 198 (1981).

This civil action stems from two of Plaintiff's administrative EEO complaints.[3] (Hammer Dep., Exs. 3 & 26).  In the first complaint, filed on July 8, 2004, Plaintiff alleged that Richardson had been harassing her since November 2002.  (Hammer Dep., Exs. 3, 5).  In a letter to Plaintiff dated September 28, 2004, an EEO officer described Plaintiff's claim as follows:

> Whether the Complainant was discriminated against, based on Reprisal for her previous EEO activities when, since November of 2002 through the present, she has been subjected to a hostile work environment by her manager, in the form of verbal abuse, excessive workloads, having to explain all her actions repeatedly, denied Compensatory time, and changing her input?

---

[3]Plaintiff also filed three prior EEO complaints, which were settled in 2003 and constitute the "protected activity" for her retaliation claim.

(Hammer Dep., Ex. 24). The letter also instructed Plaintiff to notify the EEO officer within 15 days if she disagreed with this description of her claim. Finally, the letter stated: "If no response is received, I will assume that you agree with the claim(s) and will proceed with the investigation of the complaint." (Id.). Plaintiff could not recall whether she had objected to the characterization of her claim, and the record contains no evidence that she did so. (Hammer Dep. at 272). Accordingly, Plaintiff's claim in this Court, in so far as it arises from her July 8, 2004 administrative complaint, is limited to retaliatory harassment by Richardson.

The second administrative complaint was filed by Plaintiff on April 29, 2005. (Hammer Dep., Ex. 26). Plaintiff alleged that, on November 26, 2004, she had received an annual appraisal from Richardson stating that she "met expectations," and that on March 15, 2005, Elllie Cimaglia (Richardson's supervisor) had declined Plaintiff's request for reconsideration of that appraisal. Plaintiff believed that she should have been rated as "exceeds expectations." (Hammer Dep., Exs. 20, 26, 27).

Defendant argues that Plaintiff's challenge to her evaluation is time barred because she did not file her administrative complaint within 45 days of her receipt of that evaluation. Plaintiff does not respond to this argument, and the Court agrees with Defendant's position.

4

Plaintiff received and signed her 2004 evaluation on November 26, 2004. She did not contact an EEO counselor about it until March 15, 2005, almost four months later. Although, in the interim, Plaintiff sought reconsideration of her 2004 evaluation, a request to reconsider an employment action does not toll the limitations period. See Sharp v. United Airlines, Inc., 236 F.3d 368, 373 (7th Cir. 2001). Therefore, the Court will not consider Plaintiff's discrete claim with respect to her evaluation.[4] However, as discussed below, the Court will consider the evaluation as part of Plaintiff's claim of retaliatory harassment.

B.    Plaintiff has Released and Waived All Claims that Arose Prior to October 31, 20003

On October 31, 2003, while represented and advised by counsel, Plaintiff executed an agreement to fully settle three of her prior EEO claims against the United States Treasury Department. (Hammer Dep. at 254-55 & Ex. 13). The Treasury Department agreed to pay Plaintiff $6,500 and to restore up to ten days of sick leave.

---

[4]In addition, Plaintiff admits that the only person who retaliated against her was Richardson, (Doc. 52-5, Resp. to Def. St. Mat. Facts ¶ 4), whereas the denial of reconsideration was by Richardson's supervisor, not by Richardson.

In consideration thereof, Plaintiff agreed to waive and release all claims that she had or could have had as of the date of the agreement, stating:

> In complete and final settlement of the discrimination complaints . . . filed by Iris Hammer (Complainant) against the Secretary, Department of the Treasury (Agency), and all other claims that may have been *or could have been initiated* by the Complainant prior to signing this settlement agreement . . . ., the Complainant and the Agency agree as follows . . . .

(Hammer Dep., Ex. 13 at 1)(emphasis added).  Plaintiff also agreed "not to challenge . . . any Agency action that was, or, could have been, included in her EEO complaints." (Id.).  Therefore, any claims that Plaintiff could have asserted against the Treasury Department as of October 31, 2003 have been waived; Plaintiff may only pursue claims that arose after October 31, 2003.[5]

II.   FACTS

Most of Plaintiff's allegations of harassment by Richardson are included in a four page typewritten document attached to her 2004 administrative complaint.  (See Hammer Dep. at 74, 85 & Ex. 3).  Plaintiff discussed and expounded on these

_____

[5]Defendant admits that, to the extent Plaintiff was not aware of Richardson's alleged disparagement of her prior to October 31, 2003, she has not released any claims on those alleged acts.  (Doc. 56 at n.4)

allegations at her deposition.  These alleged incidents of harassment are summarized

here:

1.      On December 5, 2002, in response to an e-mail from Plaintiff in which Plaintiff asked why another analyst was listed in a document as having one of Plaintiff's assignments, Richardson wrote "paranoia . . . ."  This was the third occasion that Richardson had used the term "paranoia" with respect to Plaintiff.  (Hammer Dep. at 106-10 & Ex. 8).

2.      Richardson yelled at Plaintiff a number of times.   At her deposition, Plaintiff explained that her allegation of yelling was based on Richardson's unjust criticism of Plaintiff's work, frequent use of a harsh tone in speaking to Plaintiff, and comments that Plaintiff could not learn anything, was slow, and that time-management training did not do her any good.  (Hammer Dep. at 127-32, 138, 200-03).

3.      Richardson would not give Plaintiff an opportunity to explain her position after Richardson unjustly criticized her.  (Hammer Dep. at 146-47).

4.      Richardson never mentioned Plaintiff's condition or asked Plaintiff how she was doing after Plaintiff broke her arm and had two eye surgeries.  (Hammer Dep. at 150).

5.      In an e-mail in November 2002, Richardson suggested taking away some of Plaintiff's assignments because Plaintiff was working from home two days per week while receiving therapy for bursitis.  Plaintiff responded that she was not on leave and could handle her work.  Richardson did not take away any of Plaintiff's work.  (Hammer Dep. at 115-16, 151).   In early 2003, Plaintiff complained that she was overworked.  (Id. at 215, 247).

7

6.  In February 2003, Richardson made Plaintiff account for her time in writing and required her to take a time-management course. Plaintiff completed the time management course on June 27, 2003. (Hammer Dep. at 188-95).

7.  Richardson asked Plaintiff to redo work that had already been approved.  (Hammer Dep. at 200, 242).

8.  In the first three months of 2003, Plaintiff worked excess hours and did not receive credit for those hours in the form of overtime pay or compensatory time off.  (Hammer Dep. at 215-58).

9.  Sometime prior to May 23, 2003, Plaintiff did not receive a $500 award given to other members of the Publication Method Team, of which she was a member.  Plaintiff did not know who was responsible for selecting the recipients of the award.  (Hammer Dep. at 156).

10. Sometime in the summer of 2003, Richardson did not allow Plaintiff to attend a three-week meeting of the Publication Method Team.  Richardson told Plaintiff that she had other things to do. (Hammer Dep. 158-61).

11. Richardson made untrue statements in a midyear evaluation given to Plaintiff in June 2003.  (Hammer Dep. at 164-72 & Ex. 10 at 3).

12. Richardson did not acknowledge a commendation that Plaintiff had received.  (Hammer Dep. at 176-77).

13. In October 2003, Richardson had to be forced to fill out Plaintiff's worker's compensation papers.  (Hammer Dep. at 147-49).

14. Richardson improperly included the midyear evaluation in Plaintiff's 2003 year-end evaluation.  (Hammer Dep. at 174-75).

AO 72A
(Rev.8/82)

15.   Richardson gave Plaintiff her 2003 year-end evaluation in February 2004, more than three months late. (Hammer Dep. at 180-82).

16.   Richardson's 2003 summary evaluation of Plaintiff stated that Plaintiff "met" expectations, whereas Plaintiff believed that she "exceeded" expectations. (Hammer Dep. at 182-87, 264).

17.   In February 2004, Richardson asked Plaintiff, "What have you done in the last two days on [an assignment]?" Richardson followed up with an e-mail criticizing Plaintiff for poor use of time. The criticism, according to Plaintiff, was unfair because one of the two days was a holiday, and on the other day, Plaintiff did not have access to her computer. (Hammer Dep. at 222-23).

18.   In February 2004, Richardson accused Plaintiff of being late with an assignment. Plaintiff responded with her own criticism of Richardson for being late with her evaluation, stating: "If I were you, if I were a manager, even if the employee were one day late with something and I hadn't given them their evaluation for three months . . . I don't think I'd say anything." In response, Richardson became so angry with Plaintiff that she jumped up out of her chair and clenched her hands. (Hammer Dep. at 133-37 & Ex. 37).

19.   In March 2004, Richardson forwarded an e-mail to Plaintiff from Wanda Edmondson and added the comment, "We will discuss today." Edmondson was critical of Plaintiff's work on a particular project. (Hammer Dep. at 211-12 & Ex. 12). Plaintiff believed that Edmondson's criticism was not justified and that Richardson should not have forwarded the e-mail to her. Plaintiff describes this incident as the "triggering event" which caused her to file her July 2004 complaint. (Id. at 211-12 & Ex. 3).

20.   Richardson gave Plaintiff conflicting instructions regarding work. (Hammer Dep. at 224).

21.   Plaintiff's ideas did not get heard "up the line" because Richardson did not agree with them.  (Hammer Dep. at 240).

At Plaintiff's deposition, she discussed an additional incident that occurred in January 2005.  After Plaintiff placed a note regarding overages (*i.e.*, overdue work) on a co-worker's office door, where it was visible to other employees in the area, Richardson took down the note and repeatedly told Plaintiff that the co-worker (LaTonya Brooks) was not responsible for resolving the overage items and that she should not go to Brooks again.  When Richardson started to walk back toward her office, Plaintiff followed and told Richardson that she only had to tell this to Plaintiff one time.  Richardson pointed her finger at Plaintiff and said, "you are not going to speak to me in that manner."  Plaintiff then told Richardson to "[j]ust leave me alone."  When Plaintiff returned to her desk, she sent an e-mail to Richardson in which she criticized Richardson's conduct.  She sent a copy of the e-mail to one of Richardson's supervisors (Ellen Cimaglia).  (Hammer Dep. at 76-80, 591-92 & Exs. 68-69).

Plaintiff also identified several incidents in her response brief.  She states that Richardson disparaged her to other supervisors within the IRS.  (Doc. 52, Brf at 21).  Plaintiff cites statements made by Ray Howard and Yvonne Smith to support this allegation.  Howard avers that he "spoke with several different supervisors . . . within

10

the IRS," each of whom "had heard [that Plaintiff] was a troublemaker who filed EEO complaints against the IRS."  (Doc. 52-2, Decl. of Ray F. Howard at 4).  Howard's testimony regarding what other individuals told him is inadmissible hearsay and will not be considered.  Moreover, even if considered, his statements do not show that Richardson was the source of the "troublemaker" comments.  Howard testified at his deposition that Richardson mentioned to him that Plaintiff had filed EEO complaints, but he did not recall her saying anything negative about it.  He did observe, however, that Richardson seemed frustrated by having to deal with EEO complaints in general. (See Howard Dep. at 26-29).

Plaintiff also relies on testimony given by Yvonne Smith.  Smith stated that she had once overheard Richardson talking about Plaintiff.  Smith could not recall what was said, whether the comments were related to work performance or personality, or even to whom Richardson was speaking.  (Doc. 52-11, Smith Dep. at 16).  She could only recall that the comment was "negative."  (Id.).

Plaintiff also alleges that Richardson told "two senior executives" that she was mentally ill.  The first incident on which Plaintiff relies is a comment that Richardson made referring to Plaintiff as "Crazy Iris."  (Doc. 52, Brf. at 21).  Richardson testified that she may have made the comment "Crazy Iris" in discussions with two managers,

11

outside Plaintiff's presence, to reflect her difficulties in supervising Plaintiff. (Richardson Dep. at 179-80).

The second incident is a statement in the declaration Richardson provided to the EEO investigator looking into Plaintiff's EEO complaints. Richardson mistakenly stated that Plaintiff had given her a letter from her doctor indicating that Plaintiff suffered from paranoid schizophrenia. In fact, that letter, dated January 7, 2002, stated that Plaintiff had been diagnosed with depression and anxiety, not paranoid schizophrenia. (Hammer Dep. at 92 & Ex. 6; see also Doc. 52, Brf. at 21; Doc. 52-8, Richardson Decl. of Dec. 17, 2004, at 4). Richardson did not have the letter in front of her when she gave her declaration to the EEO investigator, and she admitted at her deposition that she had been mistaken. (Richardson Dep. at 161-62).

Plaintiff's brief also alleges that Richardson mishandled Plaintiff's attendance records by failing to give Plaintiff credit for all of the hours she had worked. (Doc. 52, Brf. at 21-22). However, the only citation in support of this allegation is to an e-mail from Richardson dated July 21, 2003, in which Richardson reminded Plaintiff that an employee cannot collect more than 24 credit hours per pay period. (See id., citing Doc. 52-18, Ex. 3). Because this allegation is unsupported, and apparently relates to conduct that preceded Plaintiff's settlement, it will not be considered.

12

Plaintiff also contends that Richardson falsely blamed Plaintiff for overdue paperwork. (Doc. 52, Brf. at 22). Plaintiff relies on the declaration of James Saxon, in which he states that he had "been told that Richardson stated that I called her and complained that [Plaintiff] failed to meet deadlines." (Doc. 52-7, Decl. of James Saxon ¶ 2). Saxon denies that he telephoned Richardson to complain about Plaintiff. Saxon's declaration contains no admissible evidence that Richardson falsely blamed Plaintiff for failing to meet deadlines.

Finally, Plaintiff's brief alleges that she was verbally abused by Richardson. In addition to Plaintiff's deposition testimony, summarized above, Plaintiff cites the testimony of Patricia Rodney, Beverly Vallery, and Mechell Rhodes. Rodney testified about an incident in which Richardson allegedly yelled at another employee, Vicki Stoker. (See Rodney Dep. at 20). This testimony (regarding what Stoker told her that Richardson did) is inadmissible hearsay and will not be considered. Moreover, to the extent it can be considered, it undercuts Plaintiff's position that Richardson treated Plaintiff differently because of her protected activity. Vallery relates an incident on an unspecified date during which she overheard Richardson repeatedly telling Plaintiff, "Don't do that again" in "a rude tone of voice" and not allowing Plaintiff to finish what

13

she was trying to say.[6]  Rhodes discussed an occasion when she overheard Richardson

speaking to Plaintiff with a "raised tone of voice."

III.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper when no genuine issues of material fact are present

and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).

The movant carries the initial burden and must show the court that there is "an absence

of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S.

317, 325, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986).  "Only when that burden has been

met does the burden shift to the non-moving party to demonstrate that there is indeed

a material issue of fact that precludes summary judgment."  Clark v. Coats & Clark,

Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The nonmovant is then required "to go

beyond the pleadings" and to present competent evidence in the form of affidavits,

depositions, admissions and the like, designating "specific facts showing that there is

a genuine issue for trial."  Celotex, 477 U.S. at 324.  "The mere existence of a scintilla

of evidence" supporting the nonmovant's case is insufficient to defeat a motion for

_____

[6]The Court assumes that this describes the January 2005 incident discussed
above when Plaintiff put a note on a co-worker's door.

summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Resolving all doubts in favor of the nonmoving party, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  <u>Anderson</u>, 477 U.S. at 252.  "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted."  <u>Id.</u>, 477 U.S. at 249-50 (citations omitted).

IV.   <u>DISCUSSION OF MOTION FOR SUMMARY JUDGMENT</u>

Title VII prohibits an employer from discriminating against an employee because she has opposed a prohibited discriminatory practice or made a charge in a Title VII proceeding.  42 U.S.C. § 2000e-3(a).  The anti-retaliation protections of Title VII have been extended to federal employees.  <u>See Brazoria County v. EEOC</u>, 391 F.3d 685 (5th Cir. 2004).  It is undisputed that Plaintiff engaged in protected activity when she made three prior EEO charges against her employer.

As stated previously, Plaintiff alleges retaliatory harassment by Richardson. Many, if not most, of the allegedly harassing incidents experienced by Plaintiff in this action arose prior to October 31, 2003.  These will not be considered because they were

15

resolved by an October 31, 2003 settlement agreement.[7]   Plaintiff's brief does not distinguish between events that occurred prior to her settlement agreement and those that occurred afterwards.  However, Defendant's Statement of Material Facts, together with Plaintiff's responses thereto, establish that only two instances of yelling occurred after October 31, 2003: (1) the February 2004 incident in which Richardson jumped out of her chair and clenched her hands, and (2) the January 2005 incident in response to the note Plaintiff had placed on a co-worker's door.  (Cf. Doc. 47-2, ¶¶ 36, 43 with Doc. 52-5, ¶¶ 36, 43).

The other post-October 31, 2003 events about which Plaintiff complains consist of (1) the "met expectations" performance evaluation, (2) verbal criticism of Plaintiff's work performance, (3) Plaintiff's "learning" from Ray Howard in the spring of 2004 that – prior to the October 2003 settlement – Richardson had disparaged her and had

---

[7]To the extent that Plaintiff intends to argue that she was not aware of Richardson's alleged harassment in October 2003 when she executed the settlement agreement, the Court rejects her argument as it is contradicted by the evidence.  During her deposition, Plaintiff testified that Richardson had "consistently and regularly harassed" her since November of 2002, almost a year before she executed the agreement.  (See Hammer Dep. at 73 & Ex. 3 (EEO complaint) at 3).  Moreover, Plaintiff admitted that she believed that Richardson's actions constituted harassment at t he time she signed the settlement agreement.  (See Hammer Dep., Ex. 3 at 5 ("I had settled my EEO issues last Fall and thought that maybe that would stop the harassment.")).

AO 72A
(Rev.8/82)

referred to her as "Crazy Iris," and (4) learning about Richardson's incorrect statement to an EEO investigator that Plaintiff suffered from schizophrenia.[8]

In sum, the events which form the basis of Plaintiff's claim are two instances of Richardson yelling at Plaintiff, criticism of Plaintiff's work, a performance evaluation that Plaintiff deemed inaccurate, and disparaging comments about Plaintiff made outside of her presence. Defendant argues that these acts do not state an actionable claim because they are not sufficiently severe or pervasive. For reasons stated below, the Court agrees.

In <u>Burlington Northern & Santa Fe Railway Co. v. White</u>, ___ U.S. ___, 126 S.Ct. 2405, 2410, 165 L.Ed.2d 345 (2006), the Supreme Court clarified the standard for the "level of seriousness" to which an employer's retaliatory action must rise before it becomes actionable retaliation: The "plaintiff must show that a reasonable employee

---

[8]Defendant's brief also anticipated that Plaintiff would allege that Richardson's selection of Jeannie James to be a temporary team leader, and an incident in which two other employees received overtime for travel to St. Louis, were part of the alleged retaliatory harassment. As Plaintiff did not discuss these incidents in her brief , and they are not included in her lengthy statement of material facts, the Court will assume that Plaintiff does not intend to include them as part of her claim of harassment. Moreover, Plaintiff admits in her Response to Defendant's Statement of Material Facts, ¶ 68, that Richardson's reason for selecting James as the temporary team  leader was based on James' experience in the training field.  She also admits that Richardson did not retaliate against her in connection with the St. Louis overtime pay issue. <u>Id</u>. ¶¶ 81-90.

would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  126 S.Ct. at 2415 (quotation marks omitted).  See also Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006)(applying this standard to case of retaliatory harassment).  Defendant agrees that the standard set forth in Burlington applies to this case, and the Court will therefore assume that it does.  But see Caldwell v. Johnson, ___ F.Supp.2d ___, 2007 WL 1751403, slip op. (M.D.N.C. June 18, 2007)(holding that the Burlington standard does not apply to federal employees because the Title VII provision for federal employees uses the words "personnel actions" to describe employer conduct).

In Burlington, the Supreme Court rejected the requirement of a "link between the challenged retaliatory action and the terms, conditions, or status of employment," holding instead that "the scope of the anti-retaliation provision extends beyond workplace-related or employment-related acts and harms."  126 S.Ct. at 2411, 2414.  However, the Court also emphasized and elaborated on the need for material adversity:

> We speak of material adversity because we believe it is important to separate significant from trivial harms.  Title VII, we have said, does not set forth "a general civility code for the American workplace."  Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); see Faragher [v. City of Boca Raton,

> 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)](judicial standards for sexual harassment must "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing'"). An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience. See 1 B.Lindemann & P.Grossman, Employment Discrimination Law 669 (3d ed. 1996)(noting that "courts have held that personality conflicts at work that generate antipathy" and "'snubbing' by supervisors and co-workers" are not actionable under § 704(a)). The anti-retaliation provision seeks to prevent employer interference with "unfettered access" to Title VII's remedial mechanisms. Robinson [v. Shell Oil Co., 519 U.S. 337, 346, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)]. It does so by prohibiting employer actions that are likely "to deter victims of discrimination from complaining to the EEOC," the courts, and their employers. Ibid. And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence. See 2 EEOC 1998 Manual § 8, at 8-13.

Burlington, 126 S.Ct. at 2415.

The Supreme Court's reiteration of language from its previous sexual harassment cases establishes that those cases must not be ignored in assessing the level of conduct necessary for actionable retaliatory harassment. Those cases require courts to look to "all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

19

offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Under the applicable standards, the actions relied upon by Plaintiff, even when viewed collectively, do not constitute materially adverse actions such that a reasonable person in Plaintiff's position would have felt dissuaded from complaining or assisting in complaints about discrimination.

The Eleventh Circuit has also long acknowledged that Title VII's retaliation provision extends to adverse actions that fall short of ultimate employment decisions. See Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1456 (11th Cir. 1998) (although "Title VII's protection against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions," the plaintiff must still demonstrate "some threshold level of substantiality"). While Burlington uses different language in describing the applicable "level of seriousness," the Eleventh Circuit's pre-Burlington retaliation cases are instructive. A recent unpublished Eleventh Circuit case indicates that Burlington has not significantly changed the way in which the Eleventh Circuit will evaluate retaliatory harassment claims. In Bussell v. Motorola, Inc, 141 Fed.Appx. 819 (11th Cir. 2005), the Eleventh Circuit held that the plaintiff's allegations that a supervisor had retaliated against her by "constantly yelling" at her

20

and by assigning her an increased work load after she had complained about sexual harassment did not provide evidence that she had suffered from an adverse employment action.  141 Fed.Appx. at 823.  The Supreme Court vacated that opinion and remanded to the Eleventh Circuit for further consideration in light of <u>Burlington</u>.  <u>Bussell v. Motorola, Inc.</u>, ___ U.S. ___, 127 S.Ct. 38, 166 L.Ed.2d 7 (2006).  On remand, the Eleventh Circuit reinstated its opinion, finding that it was "not affected" by <u>Burlington</u> because "[t]he only alleged retaliatory acts of which Bussell complained were employment related, and the alleged retaliatory acts were either not retaliatory or were not acts that 'would have been materially adverse to a reasonable employee.'"  <u>Bussell v. Motorola, Inc.</u>, 228 Fed.Appx. 832 (11th Cir. 2006).

   <u>Bussell</u> establishes that occasional yelling by a supervisor is not actionable harassment under either the old or newly worded standard.  <u>See</u> <u>also</u> <u>Hesse v. Avis Rent A Car System, Inc.</u>, 394 F.3d 624, 630 (8th Cir. 2005)(allegations of "two years of frequent yelling" as well as other incidents were not sufficiently severe or pervasive to state a harassment claim); <u>Munday v. Waste Management of North America, Inc.</u>, 126 F.3d 239 (4th Cir. 1997)(supervisor's conduct in yelling at employee and telling others to ignore and to spy on her was not adverse employment action in retaliation case); <u>Herawi v. State of Alabama Dept. of Forensic Sciences</u>, 311 F.Supp.2d 1335,

1351 (M.D.Ala. 2004)(yelling and other negative comments were not sufficiently severe or pervasive to establish a hostile environment claim); Singh v. U.S. House of Representatives, 300 F.Supp.2d 48, 56 (D.D.C. 2004)(loud expressions of disapproval "are the kinds of normal strains that can occur in any office setting.").

Eleventh Circuit authority establishes that negative criticism of an employee by her supervisor does not generally constitute actionable harassment:

> Employer criticism, like employer praise, is an ordinary and appropriate feature of the workplace. Expanding the scope of Title VII to permit discrimination lawsuits predicated only on unwelcome day-to-day critiques and assertedly unjustified negative evaluations would threaten the flow of communication between employees and supervisors and limit an employer's ability to maintain and improve job performance. Federal courts ought not be put in the position of monitoring and second-guessing the feedback that an employer gives, and should be encouraged to give, an employee. Simply put, the loss of prestige or self-esteem felt by an employee who receives what he believes to be unwarranted job criticism or performance review will rarely – without more – establish the adverse action necessary to pursue a claim under Title VII's anti-discrimination clause.

Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1242 (11th Cir. 2001). See also Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227 (11th Cir. 2006) (finding that a reprimand and refusal to allow the plaintiff to sit on a stool while working as a cashier was not sufficiently adverse to constitute actionable retaliation);

AO 72A
(Rev.8/82)

<u>Pierri v. Cingular Wireless, LLC</u>, 397 F.Supp.2d 1364, 1380 (N.D.Ga. 2005)("Job performance criticism from a supervisor or manager is a common vicissitude of life in the working world, even if harsh or unjustified."); <u>Patton v. Indianapolis Public School Bd.</u>, 276 F.3d 334, 339 (7th Cir. 2002)(allegations that supervisor "treated [the plaintiff] in a rude, abrupt, and arrogant manner, ignored her work-related suggestions[,] failed to keep her informed about changes at work [and] subjected her to stern and severe criticism" fall short of stating an actionable hostile work environment claim). There is no basis, in this case, to depart from the general rule that employment related criticism is not actionable.[9]

Richardson's evaluation of Plaintiff, finding that she "met expectations," adds nothing to Plaintiff's claim. The evaluation was not a criticism of Plaintiff's performance, and Plaintiff cites no evidence that it had any negative financial impact on her. Moreover, Plaintiff presents no evidence that the evaluation was incorrect. <u>Cf. Lawrence v. Wal-Mart Stores, Inc.</u>, 236 F.Supp.2d 1314, 1332 (M.D.Fla. 2002) (finding no evidence that a review of "meets expectations" was negative or undeserved).

---

[9]Plaintiff was never formally disciplined or reprimanded by Richardson. (Hammer Dep. at 243).

23

Finally, the comments made out of Plaintiff's presence – the disparaging comments, reported by Howard, that Richardson allegedly made, including the "Crazy Iris" comment, and Richardson's inaccurate description of Plaintiff's mental health diagnosis to the EEO investigator – are not material.  Isolated comments of this sort, particularly those made outside of an employee's presence, do not create, or significantly add to, a hostile work environment.  See Mannie v. Potter, 394 F.3d 977, 982-83 (7th Cir. 2005).  In Mannie, the plaintiff asserted that her supervisors had made derogatory statements about her and had discussed her mental condition with other employees.  The Court of Appeals for the Seventh Circuit gave little weight to these complaints, noting that "[m]ost of the conduct that forms the basis of her claim consists of derogatory statements made by supervisors or co-workers out of her hearing."  Id., 394 F.3d at 983.

Richardson's alleged actions were not frequent, severe, or physically threatening, and for the most part consisted of work-related criticisms.  The Court finds that the alleged retaliatory harassment was not sufficiently adverse to be actionable under Title VII.[10]

---

[10]In addition, as the Defendant's Reply brief points out, Plaintiff has presented much evidence that Richardson routinely criticized and yelled at employees other than Plaintiff.  (Doc. 52, Brf. at 17-19).  Plaintiff even states that "Richardson abused many

24

## IV.   <u>DISCUSSION OF MOTION TO INTRODUCE NEW EVIDENCE</u>

Plaintiff seeks to introduce evidence regarding her non-promotion to a GS-14 grade position within the Internal Revenue Service.  (Doc. 59 at 1-3).  As discussed above, Plaintiff does not have a failure-to-promote claim in this case.  She presents no evidence regarding any specific position that she applied for and failed to receive.  Instead, she argues that Richardson's alleged harassment made her "*de facto* ineligible for the promotion process."  She requests permission to submit an affidavit in support of her argument.  (Doc. 59 at 8-9).

Plaintiff does not claim to have new evidence of any additional retaliatory conduct by Richardson.  While not entirely clear, it appears that she is contending that Richardson's previously described conduct had the effect of rendering Plaintiff ineligible for promotion.  If so, the allegedly new evidence relates only to Plaintiff's damages arising from the alleged harassment.  Because the Court finds that Plaintiff

---

others for various motivations."  (Doc. 52-5, Pla. Resp. to Def. St. of Mat. Facts ¶ 65).  This evidence significantly undercuts Plaintiff's argument that Richardson criticized and yelled at Plaintiff because of her protected activity.  <u>Cf</u>. <u>Henson v. City of Dundee</u>, 682 F.2d 897, 904 (11th Cir. 1982)("There may be cases in which a supervisor makes sexual overtures to workers of both sexes or where the conduct complained of is equally offensive to male and female workers.  In such cases, sexual harassment would not be based on sex because men and women are accorded like treatment . . . . [and] the plaintiff would have no remedy under Title VII.").

does not have an actionable claim of retaliation, the request to present new evidence regarding damages is denied as moot.

V.      CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment [Doc. 47] is **GRANTED** and Plaintiff's Motion to Introduce Newly Discovered Evidence [Doc. 59] is **DENIED**.

IT IS SO ORDERED, this 25th day of September, 2007.

_Gerrilyn G. Brill_
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

T:\FINAL.ORD\Hammer.wpd

AO 72A
(Rev.8/82)